J-S05010-17
J-S05011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  J.S.<br><br>APPEAL OF:  K.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 1533 MDA 2016 |

Appeal from the Order Entered August 17, 2016
In the Court of Common Pleas of Cumberland County
Juvenile Division at No(s): CP-21-DP-0000065-2015

| | |
|---|---|
| IN RE:  ADOPTION OF:  J.S., A MINOR<br><br>APPEAL OF:  K.W., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 1540 MDA 2016 |

Appeal from the Order Entered August 17, 2016
In the Court of Common Pleas of Cumberland County
Orphans' Court at No(s): 69 Adoptions 2016

BEFORE:  BENDER, P.J.E., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED MARCH 06, 2017**

K.W. ("Mother") appeals from the orders dated August 17, 2016, which changed the permanency goal for the minor child, J.S. ("Child") (born in April of 2014), from reunification with his parents to adoption, and terminated Mother's parental rights to Child,[1] pursuant to section 2511(a)(8)

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] J.S. ("Father") voluntarily consented to the termination of his parental rights to Child at the August 17, 2016 permanency review/termination hearing.

and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[2]  After careful review

of the record and applicable law, we affirm.

In its Pa.R.A.P. 1925(a) opinion, the orphans' court set forth the

following factual background of this case:

> Cumberland County Children and Youth Services [("CYS")]
> first became involved on December 15, 2014, when it received a
> referral alleging drug abuse by the parents.  Both parents
> admitted to drug use.  A safety plan was put in place that
> prohibited unsupervised contact between the parents and
> [Child].  [Child] was adjudicated dependent on April 30, 2015.
> After being adjudicated dependent, [Child] was placed in the
> legal and physical custody of his paternal grandparents.

> Mother's contact with [CYS] has been infrequent due to
> her drug use.  From January to July of 2015, [CYS] made
> frequent home visits and discussed the ongoing need for drug
> treatment.  In that time she had six drug tests, all of which were
> positive for heroin.

> Mother left the area for Texas in August[] 2015.
> Thereafter, Mother moved to Spokane, Washington to live with
> her parents.  It was in Washington that she began intensive
> outpatient treatment for her drug addiction in early 2016.

> In April of 2016, Mother advised the CYS caseworker that
> she wanted to return to Pennsylvania to work toward
> reunification.  She returned in late April.  She began using drugs
> almost immediately upon her return.  She was incarcerated on
> pre-existing warrants on April 29, 2016[,] after police were
> called due to a fight between her and Father.  She was released
> from jail on June 3, 2016.  She returned to Father and they fed
> each other's drug dependency.

---

[2] For ease of disposition, we consolidate the appeals at Nos. 1533 MDA 2016
and 1540 MDA 2016 *sua sponte*, as the issues in both matters are closely
related.

After she returned to Pennsylvania in April[] 2016, Mother did not contact [CYS] until August 10, 2016. The only reason she called then was to ask for help finding a detox bed. No bed was available at that time. As of the date of the [permanency review/termination] hearing, on August 17, 2016, Mother was residing in a domestic violence shelter.

Mother did not see [Child] from the time she left for Texas in the summer of 2015 until April[] 2016[,] when his paternal grandmother brought him on a trip to Washington. She has not seen him since then except for one occasion via [S]kype. She has not seen him since returning to Pennsylvania.

Mother's struggles with heroin have been epic. To the date of the hearing, she had participated in at least seven drug and alcohol programs, as well as five detox stays.

[Child] is doing extremely well in the home of his paternal grandparents. He is a happy and healthy two-year old. He has resided with his grandparents since he was about three months old. They love him and are prepared to adopt him.

Orphans' Court Opinion ("OCO"), 10/18/16, at 1-3 (internal footnotes omitted).

On March 9, 2016, CYS filed a petition to schedule a goal change to adoption permanency hearing. Subsequently, CYS filed a petition for involuntary termination of parental rights on July 28, 2016. A joint hearing was held on these matters on August 17, 2016. After hearing testimony from Mother, Father, CYS, and the paternal grandfather, the court entered orders on that same date, changing the permanency goal from reunification with Child's parents to adoption and terminating Mother's parental rights to Child.

On September 16, 2016, Mother filed timely notices of appeal. She now presents the following issues for our review:

I.   Did the [orphans' court] err as a matter of law and abuse its discretion in determining that [CYS] presented evidence so clear, direct, weighty, and convincing as to enable the fact finder to come to a clear conviction without hesitancy, of the truth of the precise facts in issue?

II.   Did the [orphans' court] err as a matter of law and abuse its discretion in determining the best interests of [Child] would be served by changing the permanency goal from reunification to adoption, when the evidence indicated that Mother could provide for [Child's] needs and appropriately parent [Child]?

III.   Did the [orphans' court] err as a matter of law and abuse its discretion in determining the best interest of [Child] would be served by terminating the parental rights of Mother, when the evidence indicated that the original reasons for placement of [Child] no longer exist or had been substantially eliminated?

Mother's Brief at 5.

To begin, we deem Mother's first claim to be waived for failure to develop her argument.  Mother baldly states in her brief that the lower court erred "in determining that CYS presented evidence so clear, direct, weighty, and convincing as to enable the fact finder to come to a clear conviction without hesitancy, of the truth of the precise facts in issue."  Mother's Brief at 10.  Mother fails, however, to explain precisely what evidence or "facts in issue" to which this statement refers.  In fact, Mother's brief is completely void of any discussion whatsoever of this claim.  It has been well-established that "[w]hen briefing[,] … it is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities."  *In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012).  We

- 4 -

have further stated that "[w]e will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Id.*

Pennsylvania Rule of Appellate Procedure 2119 expressly states that the argument section of a brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "Appellate arguments which fail to adhere to [the Rules of Appellate Procedure] may be considered waived, and arguments which are not appropriately developed are waived." ***Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014). Here, despite the fact that Mother lists three issues in her "Statement of Questions Involved," the argument section of her brief only contains one section, in which all of her claims are jumbled, making it difficult for this Court to decipher her arguments. To the extent that we were able to conduct a meaningful review of the other two claims raised by Mother on appeal, those issues are addressed herein. However, we are constrained to deem waived the first issue due to Mother's complete failure to develop this claim.

In addressing Mother's second issue regarding the permanency goal change, we are guided by the following:

> In cases involving a court's order changing the placement

- 5 -

goal … to adoption, our standard of review is abuse of discretion. ***In re N.C.***, 909 A.2d 818, 822 (Pa. Super. 2006). To hold that the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." ***Id.*** (quoting ***In re G.P.-R.,*** 851 A.2d 967, 973 (Pa. Super. 2004)). While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a "responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." ***In re A.K.***, 906 A.2d 596, 599 (Pa. Super. 2006). Therefore, our scope of review is broad. ***Id.***

***In re S.B.***, 943 A.2d 973, 977 (Pa. Super. 2008).

Furthermore, this Court has stated:

Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act [42 Pa.C.S. §§ 6301-65], which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"). The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the 1998 amendments to the Juvenile Act, as required by the ASFA, place the focus of dependency proceedings, including change of goal proceedings, on the child. Safety, permanency, and well-being of the child must take precedence over *all* other considerations, including the rights of the parents.

***In re N.C.***, 909 A.2d 818, 823 (Pa. Super. 2006) (citations and footnotes omitted). Additionally, we recognize that "the agency has the burden to show a goal change would serve the child's best interests…." ***In re R.M.G.***, 997 A.2d 339, 347 (Pa. Super. 2010).

Specifically, section 6351 of the Juvenile Act provides direction to the court for the disposition of dependent children, stating in pertinent part:

- 6 -

**§ 6351. Disposition of dependent child**

…

**(f) Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.
(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
(4) The appropriateness and feasibility of the current placement goal for the child.
(5) The likely date by which the placement goal for the child might be achieved.
(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
(6) Whether the child is safe.

…

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

> (i)   the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or
> (iii) the child's family has not been provided with necessary services to achieve the safe return to the

child's parent, guardian or custodian within the time frames set forth in the permanency plan.

…

**(f.1)    Additional    determination.**—Based    upon    the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.
(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.
(3) If and when the child will be placed with a legal custodian in cases where the return to the child' parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.
(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.
(5) If and when the child will be placed in another living arrangement intended to be permanent in nature which is approved by the court in cases where the county agency has documented a compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and willing relative.

**(f.2) Evidence.**—Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party

at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court order.**—On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S. § 6351(f), (f.1), (f.2), (g).

Additionally, this Court has provided further considerations that apply in goal change situations, stating:

Because the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan. *In re N.C.*, *supra* [at] 826-27. Where a parent's "skills, including [his or] her judgment with regard to the emotional well-being of her children, remain problematic[,]" a goal change to adoption might be appropriate, regardless of the parent's compliance with a permanency plan. *Id.* at 825. The agency is not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. *In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002). *See also In re S.B.*, *supra* at 981 (giving priority to child's safety and stability, despite parent's substantial compliance with permanency plan); *In re A.P.*, 728 A.2d 375, 379 (Pa. Super. 1999), *appeal denied*, 560 Pa. 693, 743 A.2d 912 (1999) (holding where, despite willingness, parent cannot meet "irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent"). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

*In re R.M.G.*, 997 A.2d at 347.

Here, Mother argues that "the original reasons for [] Child's placement either had been eliminated or [were] in the process of being eliminated, and

- 9 -

as such, the goal should not have been changed to adoption…." Mother's Brief at 12-13. Mother elaborates, stating that the original reason for placement was primarily her drug use and that she participated in intensive outpatient drug and alcohol treatment in Washington State. Mother claims she successfully completed the drug and alcohol treatment while living in Washington, and that she was clean and sober for six months. *See id.* at 13. However, Mother avers that she had no choice but to return to Pennsylvania to work on her goals to satisfy CYS and to reunite with Child. She attempts to shift the blame for her failure to maintain her sobriety onto CYS, as follows:

> Mother knew that her sobriety would be at risk i[f] she returned to Pennsylvania. However, she felt she had no choice. Mother could not prove to CYS that she was meeting her goals and remaining drug free when they were refusing to have her drug tested in Washington because paying $53.00 per test is too expensive. Moreover, because CYS doesn't contract with any parenting services in Washington state, if Mother wanted to meet her goal of improving her parenting, she had to do it in Cumberland County, Pennsylvania. CYS offered Mother no other choices. Had CYS been willing to work with Mother and offer her services in Washington, it is submitted that she would have remained clean and been reunified with [Child].

Mother's Brief at 13.

The record belies Mother's accusations that CYS "blatantly refused" to assist her or to provide her with services while living with her family in Washington. *See* Mother's Brief at 14. To the contrary, CYS states that it "provided no barrier to Mother to work on her goals in Washington, it just wouldn't fund it." CYS's Brief at 10. CYS further averred that "[i]n an effort

to facilitate the Child joining her in Washington, CYS submitted an Interstate Compact Home Study request. By the time it was received and processed in Washington, Mother had already returned to Pennsylvania." ***Id. See also*** N.T. Hearing, 8/17/16, at 24-25. Furthermore, based on Mother's own testimony, it is clear that she is still struggling with drug use. ***See id.*** at 40 (Mother's admitting that she relapsed within six days of returning to Pennsylvania and reuniting with Father).

Moreover, our review of the permanency goal change order reveals that the lower court thoroughly addressed all of the appropriate matters as set forth in section 6351(f) of the Juvenile Act. Specifically, with regard to Mother's compliance with the permanency plan, the court found "[t]here has been minimal compliance with permanency plan, in that [Mother] has not met the objectives on her service plan and does not place the needs of [Child] above her own. She has not demonstrated that [*sic*] ability to maintain her sobriety, housing or complete parenting education." Permanency Review Order, 8/17/16, at 1. Additionally, the court found that Mother has made "minimal progress toward alleviating the circumstances which necessitated the original placement." ***Id.*** Accordingly, the court concluded that the prior permanency plan developed for Child with the goal of reunification is no longer feasible and that the plan needs to reflect a goal change to adoption. ***See id.*** at 2.

We determine that there is competent evidence in the record to support the court's conclusion that, despite her attempts, Mother made

insufficient progress toward alleviating the circumstances which necessitated Child's original placement. Accordingly, we agree with the lower court's determination that Child's best interests are served by changing Child's permanency placement goal from reunification to adoption, and we discern no abuse of discretion on the part of the orphans' court in so ordering. We affirm the order changing the permanency goal to adoption.

Next, we examine Mother's third and final claim regarding the termination of her parental rights under the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 575 Pa. 647, [654-655,] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and

termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, [165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re S.H.***, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention

- 13 -

paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted). This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case, CYS sought termination of parental rights under Sections 2511(a)(2), (5), (8), and (b), which provide as follows:

> **(a)** **General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> …
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or  assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> …
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date

of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

…

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care of found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (5), and (8); (b). The orphans' court concluded that CYS provided clear and convincing evidence that Mother's parental rights should be terminated pursuant to all three subsections of Section 2511(a); however, the court focused its opinion on the grounds set forth in subsection (8). **See** OCO at 4-5.

As we addressed the application of section 2511(a)(8) in **In re Z.P.**, 994 A.2d 1108 (Pa. Super. 2010), we noted:

"To terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." **In re Adoption of M.E.P.**, 825 A.2d 1266, 1275-76 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(8). "Section 2511(a)(8) sets a 12-month frame for a parent to remedy the conditions that led to the children's removal by the court." **In re A.R.**, 837 A.2d 560, 564 (Pa. Super. 2003). Once the 12-month period has been established, the court must next

determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of [CYS] supplied over a realistic time period. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [CYS's] services. *In the Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa. Super. 2003); *In re Adoption of M.E.P.*, *supra*.

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have his parental rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001).

*In re Z.P.*, 994 A.2d at 1118.

Here, in support of its finding that grounds for terminating Mother's parental rights were sufficiently established under 23 Pa.C.S. § 2511(a)(8), the orphans' court succinctly stated the following:

[Child] was removed from Mother's care on April 30, 2015[,] as a result of her drug addiction. At the time we entered the order terminating her parental rights, [Child] had been in placement continuously for over fifteen months. During that time, Mother had made virtually no progress toward ending her drug dependency.

Mother's heroin use hampered her ability to stay in contact with [CYS] and [Child]. She had gone months at a time without contacting [CYS]. She has had extremely infrequent contact with [Child] since he has been removed from her care. Mother has not physically seen [Child] since April of 2016. Although she returned to Pennsylvania in April[] 2016[,] to work on reunification, she has had no contact with [Child] since her return. Rather than work on reunification, she directed all of her energy toward getting high.

OCO at 4-5.

- 16 -

As discussed *supra*, Mother's attempt to shift the blame for her relapsing is to no avail. The record reveals that Mother relapsed within a mere six days of returning to Pennsylvania and was incarcerated for thirty-eight days as a result of outstanding criminal matters. At the termination hearing, Mother asked the court to give her "just a little more time," and claimed to be detoxing herself. N.T. Hearing at 43-44. However, the court responded: "You've had plenty of time to get your act together." *Id.* at 52. This Court has previously acknowledged:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his … ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path or maintaining the parent-child relationship. *Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs*."

*In re Z.P.*, 994 A.2d at 1119 (quoting *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004)) (emphasis added).

The record clearly reflects that the conditions which initially led to the removal of Child from his Mother's care continue to exist and that termination of Mother's parental rights would serve the needs and welfare of Child. Accordingly, we conclude that the orphans' court's determinations regarding section 2511(a)(8) are supported by sufficient, competent evidence in the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Mother argues that the lower court failed to adequately address "the bonding issue" between her and Child. *See* Mother's Brief at 14. To the contrary, in further support of its conclusion that termination of Mother's parental rights is in the best interest of Child, the court expressly stated the following:

> [Child] is thriving in the home of his grandparents, where he has resided since he was three months old. They are the only

parents he has known virtually his entire life. He is loved by and bonded with them. The termination of Mother's parental rights will enable his grandparents to adopt him and give him the permanency he deserves. Furthermore, because of her lack of significant contact with [Child], we are satisfied that he will not suffer any adverse effects from the termination of these parental rights.

OCO at 5.

As there is competent evidence in the record that supports the lower court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Mother, we conclude that the court did not abuse its discretion as to section 2511(b). *See S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the order terminating Mother's parental rights to Child.

Order changing permanency goal to adoption affirmed. Order involuntarily terminating parental rights of Mother affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/6/2017